22-1766, 22-1767
Khesin v. Aetna Life Insurance Company

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 2nd day of April, two thousand twenty-four.

PRESENT:
DENNIS JACOBS,
BARRINGTON D. PARKER,
MYRNA PÉREZ,
*Circuit Judges.*

_____

DANIEL KHESIN,

*Plaintiff-Appellant*,

v.                                                                                        Nos. 22-1766, 22-1767

HARTFORD LIFE & ACCIDENT INSURANCE
COMPANY,

*Defendant-Appellee*.*

_____

---

* The Clerk of Court is respectfully directed to amend the official caption as set forth above.

**FOR PLAINTIFF-APPELLANT:**     HUDSON T. ELLIS, Eric Buchanan & Associates, PLLC, Chattanooga, TN.

**FOR DEFENDANT-APPELLEE:**     GREGORY J. BENNICI (Patrick W. Begos, *on the brief*), Robinson & Cole LLP, Stamford, CT.

Appeal from two judgments of the United States District Court for the District of Connecticut (Merriam, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the district court's two judgments (No. 22-1766, ECF No. 4; No. 22-1767, ECF No. 4) are **AFFIRMED.**[2]

## BACKGROUND

Plaintiff-Appellant Daniel Khesin worked at DS Healthcare Group, Inc. ("DS Healthcare") until 2017, when neuromyelitis optica allegedly rendered him unable to work. DS Healthcare subscribed to a group benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). Under the group benefit plan, Defendant-Appellee Hartford Life & Accident Insurance Company ("Hartford") provided eligible DS Healthcare employees with long-term disability ("LTD") and life-insurance coverage, the latter of which contained a life-waiver-of-premium ("LWOP") benefit. Khesin applied for LTD benefits and Hartford, upon learning of the LTD claim, initiated a LWOP claim on his behalf.

Hartford initially denied both the LTD claim and the LWOP claim. Khesin successfully appealed his LTD claim, and Hartford paid LTD benefits for two years. Although Hartford

---

[2] Although there are two separate appeals—one docketed under No. 22-1766 and one docketed under No. 22-1767—we address both appeals in this summary order because they rely on substantially the same evidence adduced for, and from, the combined bench trial held in the district court.

reviewed Khesin's LWOP claim in light of his successful LTD appeal, it upheld its decision to deny LWOP benefits. As Khesin approached the two-year mark of receiving LTD payments, Hartford informed him that his LTD benefits would not be renewed because he did not qualify under the subsequent period's applicable disability test.[3] Khesin again appealed, but this time Hartford upheld its decision not to renew his LTD benefits. Khesin then filed separate actions in the district court seeking judicial review pursuant to ERISA of Hartford's denials of his LTD and LWOP claims. Following a consolidated bench trial, the district court issued two separate decisions—one affirming Hartford's denial of Khesin's LTD claim and one affirming the denial of his LWOP claim. Khesin timely appealed. We assume the parties' familiarity with the remaining underlying facts, the procedural history, and the issues on appeal.

**STANDARD OF REVIEW**

On appeal from an ERISA bench trial, this Court reviews "the district court's findings of fact for clear error, and conclusions of law and mixed questions *de novo*." *Connors v. Conn. Gen. Life Ins. Co.*, 272 F.3d 127, 135 (2d Cir. 2001). In this case, we review the decision of the district court de novo because Khesin challenges only the district court's conclusion that he is not "disabled" within the meaning of the insurance policies.

The district court conducted its own review of Hartford's denial under an arbitrary and capricious standard. When a federal court reviews an ERISA administrator's denial of benefits, the standard of review depends on whether the insurance policy confers discretionary authority to

---

[3] After the first twenty-four months of approved LTD benefits, the policy shifts to a more restrictive disability standard, which asks whether a claimant is unable to hold "any reasonable occupation," defined as "any gainful activity" for which a claimant (a) is "or may reasonably become [able to perform], fitted by education, training, or experience," and (b) can earn "an income more than 80% of [their] adjusted predisability earnings." Special App'x (No. 22-1766) at 4–5 (quoting Admin. R. (No. 22-1766) at 123, 140).

3

the administrator to evaluate a benefits application. If a policy explicitly "confer[s] upon a plan administrator [such] discretionary authority," as Khesin concedes Hartford's policies do, we review the administrator's denial of benefits to determine whether it was "arbitrary and capricious"; otherwise, the review is de novo. *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).

The scope of the arbitrary and capricious standard of review is "narrow" in that "we are not free to substitute our own judgment for that of the [administrator] as if we were considering the issue of eligibility anew." *Id.* at 442. A court may overturn an administrator's denial "only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law." *Id.* (internal quotation marks and citation omitted); *see also Miles v. Principal Life Ins. Co.*, 720 F.3d 472, 485 (2d Cir. 2013) ("[D]espite our *de novo* review of the district court's decision, we accord substantial deference to [the administrator]'s underlying determination denying [the plaintiff]'s claim."). "Substantial evidence . . . is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the administrator and requires more than a scintilla but less than a preponderance." *Miller v. United Welfare Fund*, 72 F.3d 1066, 1072 (2d Cir. 1995) (brackets, ellipsis, internal quotation marks, and citation omitted).

## **DISCUSSION**

Khesin raises numerous challenges, including some that apply to both the LTD claim and the LWOP claim.

We first address the challenge that applies only to the LTD claim. Khesin contends that the district court erred in finding that Hartford adequately considered his non-exertional limitations. Khesin is mistaken. The district court assessed Hartford's reliance on seven

4

consultants who conducted independent peer and clinical reviews of Khesin's records. These consultants considered and discussed Khesin's subjective complaints of pain, fatigue, or lack of concentration. And Hartford considered Khesin's complaints of pain and fatigue by relying on records from treating physicians and non-treating physicians. *See, e.g.*, Admin. R. (No. 22-1766) at 3283. Ultimately, Hartford "acted within its discretion in relying upon the conclusions of its independent consultants'. . . reports." *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 85 (2d Cir. 2009) ("[C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician . . . ." (quoting *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003))). The district court did not err in concluding that Hartford considered Khesin's non-exertional limitations.

We next address Khesin's challenge that applies only to the LWOP claim. Khesin argues that the district court erred in finding that Hartford was not required to obtain a vocational analysis. Under Hartford's LWOP policy, a claimant meets the applicable disability test if they are unable "to work at any reasonable job," defined as "any job for pay or profit which [the claimant is], or may reasonably become, qualified for by education, training, or experience." Admin. R. (No. 22-1767) at 134. Khesin contends that, under *Demirovic v. Building Service 32 B-J Pension Fund*, 467 F.3d 208 (2d Cir. 2006), the phrase "any reasonable job" required Hartford to obtain a vocational analysis to support its denial of his LWOP claim. Khesin's argument is unpersuasive.

In *Demirovic*, we held that a disability-benefits plan's definition of "total and permanent disability"—defined as the inability to "perform any gainful employment"—could not be reasonably interpreted to "deny benefits to any claimant who is physically capable, in the abstract, of any kind of work whatsoever, regardless of the claimant's individual vocational circumstances."

5

*Id.* at 209, 213.   To hold otherwise "would render the plan's promise of a disability pension hollow for all but the most grievously incapacitated claimants."   *Id.* at 215 (brackets and citation omitted).   We therefore concluded that the phrase "any gainful employment" under similar disability-benefit plans required a plan administrator to "show adequate consideration of a claimant's vocational characteristics."   *Id.* at 216.   Such a "standard reflects the most important purpose of ERISA, which is to assure American workers that they may look forward with anticipation to a retirement with financial security and dignity, and without fear that this period of life will be lacking in the necessities to sustain them as human beings."   *Id.* at 215 (internal quotation marks and citation omitted).

Here, the "any reasonable job" language in the LWOP plan is not analogous to the "any gainful employment" language in the disability-benefits plan in *Demirovic*.   As the district court correctly concluded: "LWOP benefits, unlike LTD benefits, do not implicate 'the most important purpose of ERISA,' because they do not provide income insurance like LTD benefits."   Special App'x (No. 22-1767) at 42 (citations omitted).   The district court also aptly noted that the LWOP policy's "language does not implicate the same concerns expressed by the Second Circuit in the context of a 'general disability plan'" because "it is *reasonable* to infer that LWOP benefits are meant to be a short-term benefit for 'the most grievously incapacitated claimants' who would otherwise have no reasonable opportunity to obtain life insurance on the open market."   *Id.* at 42–43 (alterations omitted) (quoting *Demirovic*, 467 F.3d at 214 n.4, 215).   Because the LWOP benefits here differ fundamentally from the LTD benefits discussed in *Demirovic*, we do not determine that the district court erred in concluding that Hartford was not required to obtain a vocational analysis under *Demirovic*'s reasoning.

6

We now discuss the challenges that apply to both claims. Khesin argues that the district court erroneously relied on, or considered, a number of post-hoc rationalizations. We have held in the ERISA context that "a district court's review under the arbitrary and capricious standard is limited to the administrative record." *Miller*, 72 F.3d at 1071. In the analogous context of reviewing an administrative agency's actions, we have declined to credit an agency's "post hoc rationalizations" that "are not reasonably discernible from its initial decision justifying the action." *Kakar v. U.S. Citizenship & Immigr. Servs.*, 29 F.4th 129, 133 (2d Cir. 2022) (citation omitted). In this case, the district court did not "rely on evidence outside the administrative record." *Miller*, 73 F.3d at 1071.

The first purported post-hoc rationalization concerns the district court's discussion of one of Hartford's consultant physicians—Dr. Behzad Emad—who stated in his peer and clinical review report that one of Khesin's treating physicians—Dr. Melissa Ortega—"agreed that [Khesin] has the capacity to perform full time duty with the provided restrictions and limitations." Admin. R. (No. 22-1766) at 5254. Dr. Emad's statement appears twice in his written report submitted to Hartford, which was incorporated into the administrative record. More significantly, crediting it did nothing more than add weight to Hartford's original conclusion: that the clinical evidence did not support an entitlement to LTD or LWOP benefits under the relevant standards. At no point in the litigation did Hartford abandon that justification in favor of some competing rationale "not reasonably discernible from its initial decision." *Kakar*, 29 F.4th at 133. The district court's discussion of Dr. Emad's note concerning Dr. Ortega therefore does not implicate any of this Circuit's case law on impermissible post-hoc rationales.

The second purported post-hoc rationalization concerns the district court crediting

7

Hartford's position that one of Khesin's treating physicians—Dr. Craig Lichtblau—opined about Khesin's possible *future* restrictions, which are irrelevant under the relevant policy language, rather than his *present* restrictions. Dr. Lichtblau's opinion was in the administrative record, Special App'x (No. 22-1766) at 54–58; Special App'x (No. 22-1767) at 36–39, and the district court's interpretation of it merely reaffirmed the district court's prior conclusion from its plain reading of Dr. Lichtblau's report as a whole and from other evidence in the record. For example, Dr. William J. Kroski, one of Hartford's consulting physicians, opined that Khesin's neuromyelitis optica "could continue to progress as well." Admin. R. (No. 22-1766) at 894. Here, too, neither Hartford nor the district court strayed from the rationales reasonably discernible from the administrative decision. In any event, the Supreme Court has held that "[a]n appellate court cannot substitute its interpretation of the evidence for that of the trial court simply because the reviewing court might give the facts another construction, resolve the ambiguities differently, and find a more sinister cast to actions which the District Court apparently deemed innocent." *Inwood Lab'ys., Inc. v. Ives Lab'ys., Inc.*, 456 U.S. 844, 857–58 (1982) (internal quotation marks and citation omitted).

Finally, Khesin raises a catch-all challenge, arguing that the district court erred in finding that the evidence adequately supported Hartford's determination that Khesin was not disabled under the LTD policy and the LWOP policy. Khesin's briefing mainly summarizes favorable medical evidence in the record, and he effectively invites us to reconsider the conflicting medical opinions. We deny his invitation because, under the narrow arbitrary-and-capricious standard, we cannot reweigh the evidence "as if we were considering the issue of eligibility anew." *Pagan*, 52 F.3d at 442. We must therefore reject Khesin's general challenge to the district court's

assessment of the evidence regarding his LTD claim and LWOP claim.

* * *

We have considered Khesin's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgments of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court